# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BAMM OH,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : No. 3:19-cv-1221 (VLB) |
| JARRIN, et al.,<br>　　Defendants. | :<br>:<br>:<br>: |

## ORDER

Plaintiff, Bamm Oh, currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Plaintiff claims that defendants Jarrin and Batista use excessive force against him and Warden Corcella took no action when informed of the incident. Plaintiff seeks damages from the defendants in individual and official capacities.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* This requirement applies both when plaintiff pays the filing fee and when she proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed

allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I. Allegations

On March 20, 2018, plaintiff returned to the Golf-Unit day room at Garner Correctional Institution after visiting the medical unit. Doc. #1 ¶ 1. He asked Officer Jarrin if he could get the water jug for his C-PAP machine from his friend's cell. Officer Jarrin agreed and opened the inmate's cell. *Id.* ¶ 2. As plaintiff leaned into the cell to pick up the jug, Officer Jarrin asked plaintiff what he was doing in the cell and told him that he could not enter another inmate's cell. *Id.* ¶¶ 3-4. Plaintiff apologized. *Id.* ¶ 5.

Plaintiff approached the control bubble and put out his hand. Officer Jarrin told plaintiff not to touch him and said that he could not touch a correctional officer. *Id.* ¶ 6. Plaintiff again apologized and told Officer Jarrin not to speak to

2

him that way.  Officer Jarrin asked why not and said that plaintiff was not going to do anything.[1]  *Id.* ¶ 7.  Plaintiff put down his water jug and came around to grab his ID card.  *Id.* ¶ 8.  Plaintiff characterizes the exchange as him apologizing and Officer Jarrin being verbally aggressive.  *Id.*

Officer Batista told plaintiff to lock up in his cell.  *Id.* ¶ 9.  As plaintiff turned, Officer Jarrin tackled him to the ground, handcuffed him and held him down.  *Id.* ¶ 10.  Plaintiff was not resisting and could not move.  Officers Batista and Jarrin repeatedly punched plaintiff in the mouth and nose with closed fists and called a code orange.  *Id.* ¶ 11.

When other officers responded to the code, they got plaintiff up and brought him to a table in the day room.  His nose and mouth were full of blood. *Id.* ¶¶ 12-13.  When medical staff tried to clean his face, plaintiff told them not to touch him until pictures were taken of his injuries.  *Id.* ¶¶ 14-15.

Lieutenant Langenheim ordered that plaintiff be taken to restrictive housing in Fox Unit.  *Id.* ¶ 16.  At this time, blood was dripping from plaintiff's nose.  When he tried to inhale the blood because it felt uncomfortable, he sneezed.  *Id.* ¶ 17.  Officers were ordered to put plaintiff to the wall and Lieutenant Langenheim ordered that a mask be put over plaintiff's face.  *Id.*

Plaintiff was shackled and escorted to restrictive housing.  His handcuffs were very tight.  *Id.* ¶ 18.  In the restrictive housing cell, officers removed plaintiff's clothing.  He was left in the cell, naked, for twenty minutes.  *Id.* ¶¶ 18-20.

---

[1] The attached disciplinary report indicates that when Officer Jarrin told plaintiff not to touch him, plaintiff stated, "Oh yeah what the f—k you going to do about it" and became aggressive.  Doc. #1 at 8.

3

Pictures were taken of plaintiff's face, hands, wrist, nose, and mouth. Medical staff asked routine questions and left the cell. Plaintiff was then given boxers and a t-shirt. *Id.* ¶ 20.

Plaintiff received two disciplinary charges of threats on correctional employees, one for assault on staff,[2] and one for attempted assault on staff.[3] *Id.* ¶ 21. Plaintiff pleaded guilty to the threats charges and received fourteen days in restrictive housing. *Id.* He had a hearing on the assault charges. He was found guilty and received concurrent sanctions of thirty days in restrictive housing. *Id.* ¶ 22. The following day, plaintiff learned that he was being placed on chronic discipline status. *Id.* ¶ 23.

Officer Jarrin and his brother both were assigned to restrictive housing while plaintiff was there. *Id.* ¶ 24. Unidentified persons would not respond to plaintiff's emergency call button. *Id.* Officer Jarrin and his brother intimated that they had tampered with plaintiff's food. *Id.* ¶ 25.

Plaintiff reported these actions to Warden Corcella. The warden said that he was not going to transfer Officer Jarrin to another unit. *Id.* ¶ 26. Plaintiff remained in restrictive housing for 79 days, completing his sanctions and Phase 1 of the Chronic Discipline Program, before he was transferred to Corrigan-Radgowski Correctional Center. *Id.* ¶ 26-27.

## II. Discussion

Plaintiff asserts a claim for use of excessive force. *See* Doc. #1 ¶ 32 ("If the

---

[2] Plaintiff was charged with spitting blood on the officer. Doc. #1 at 7.

[3] Plaintiff was charged with touching an officer on his arm. Doc. #1 at 8.

officers and warden officer Jarrin officer Batista and Warden Corcella didn't physically assault me my prison time would have been different…."). Plaintiff was a sentenced inmate at all times relevant to this action.[4] Thus, his claims are considered under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment).

### A. Official Capacity Claims

Plaintiff seeks damages from the defendants in their individual and official capacities. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor has plaintiff alleged facts suggesting that Connecticut has waived this immunity. As plaintiff cannot assert claims for damages against the defendants in their official capacities, all claims against the defendants in their official capacity are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B. Excessive Use of Force

The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per

---

[4] The Department of Correction website shows that plaintiff was sentenced on December 16, 2016. www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=261810 (last visited August 16, 2019).

curiam).  The "core judicial inquiry" is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

To state a claim for use of excessive force, plaintiff must prove that, subjectively, the defendants acted maliciously or sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.  *Hudson*, 503 U.S. at 7.  To evaluate the defendants' conduct, the Court considers various factors including: the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants' and any efforts by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted).

In addition, plaintiff must prove, objectively, that the defendants' actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 8).  A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)).  However, it is the force used, not the injury sustained, that "ultimately counts."  *Id.*  A malicious use of force constitutes a per se Eighth Amendment violation because "contemporary standards of decency are always violated."

*Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 at 9).

Plaintiff alleges that defendants Jarrin and Batista repeatedly punched him the nose and mouth with closed fists when he was on the ground and not resisting. Plaintiff has sufficiently alleged that the force was not necessary and was used maliciously. The excessive force claim will proceed against defendants Jarrin and Batista.

C. Supervisory Officials

Plaintiff includes Warden Corcella and Commissioner Cook, both supervisory officials, as defendants.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the constitutional violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act).

Plaintiff includes Warden Corcella as a person who assaulted him. He does not, however, allege any facts suggesting that Warden Corcella participated in or was aware of the assault while it was occurring. Rather he alleges that Warden Corcella would have been notified that a code orange had been called, and that

7

he told Warden Corcella about the excessive force after the incident. These allegations are insufficient to demonstrate Warden Corcella's personal involvement. *See Drew v. City of New York*, No. 16 Civ. 0594(AJP), 2016 WL 4533660, at *13 (S.D.N.Y. Aug. 29, 2016) (holding that telling warden about assault after the fact is insufficient to satisfy any *Colon* factor).

The only other allegation against Warden Corcella is that he permitted Officer Jarrin to work in plaintiff's restrictive housing unit. Plaintiff alleges that Officer Jarrin harassed him by saying that he had tampered with plaintiff's food, but presents no facts suggesting that this occurred. Verbal harassment, standing alone, does not constitute a constitutional violation. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010). As plaintiff alleges no facts suggesting that Warden Corcella violated any of plaintiff's constitutional rights by permitting Officer Jarrin to work in the unit, he fails to state a plausible claim against Warden Corcella.

Plaintiff names Commissioner Cook as a defendant but alleges no facts against him. As plaintiff has not alleged any facts suggesting that Commissioner Cook was personally involved in the incidents described in the Complaint, he fails to state a plausible claim for supervisory liability against defendant Cook. The claims against defendants Corcella and Cook are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### III. Motion for Appointment of Counsel

Plaintiff seeks appointment of *pro bono* counsel in this action pursuant to 28 U.S.C. § 1915. The Second Circuit repeatedly has cautioned the district courts

against the routine appointment of counsel. *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit also has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)).

Plaintiff has submitted a list of attorneys he contacted and indicates that he has not yet received responses from many of them. In addition, he states that Inmates' Legal Aid Program is working with him. As he is receiving legal assistance from Inmates' Legal Aid Program, he has not demonstrated that he is unable to obtain legal assistance on his own. Plaintiff's motion for appointment of counsel is denied without prejudice.

## IV. Motion for Discovery

Plaintiff has filed a motion asking the Court to conduct discovery in this case on his behalf. The court impartially adjudicates cases. It does not conduct discovery on behalf of litigants. If the court were to do so it would become an advocate for the litigant. This is not permitted. *See Brown v. Tuttle*, NO. 3:13-cv-1444(VAB), 2015 WL 4546092, at *2 (D. Conn. July 28, 2015) (court not authorized to conduct discovery on behalf of litigant); *Grant v. McGill*, No. 3:06CV1063(RNC)(DFM), 2006 WL 2666087, at *1 (D. Conn. Sept. 15, 2006) (if court were to conduct discovery on behalf of litigant it would become an advocate, not an impartial adjudicator) (citing *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)).

**Plaintiff's motion is denied. Plaintiff may conduct discovery in accordance with Federal Rules of Civil Procedure 26-37 and the Standing Order Re: Initial Discovery Disclosures for cases initiates by self-represented inmates.**

**CONCLUSION**

**All claims for damages against the defendants in official capacity are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2), and the claims against defendants Corcella and Cook in their individual capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).**

**In accordance with the foregoing analysis, the Court enters the following orders:**

**(1) The Clerk shall verify the current work addresses for defendants Jarrin and Batista with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint and this Order to them within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).**

**(2) The Clerk shall send written notice to plaintiff of the status of this action, along with a copy of this Order.**

(3) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one

pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to plaintiff.

(11) Plaintiff's Motion for Appointment of Counsel [Doc. #3] is DENIED without prejudice.

(12) Plaintiff's Motion for Discovery [Doc. #8] is DENIED.

SO ORDERED.

Dated this 20th day of August 2019 at Hartford, Connecticut.

                                        **/s/**
                              **Vanessa L. Bryant**
                              **United States District Judge**